UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANIS PETERSON, <br><br>         Plaintiff, <br><br>    v. <br><br> WIND GAP FARM SERVICES LLC AND <br> BINNACLE CAPITAL SERVICES LLC, <br><br>         Defendants. | Case No. 4:18-cv-40088-DHH |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND TO DISMISS OR STAY THIS LAWSUIT**

In November 2017, Plaintiff Janis Peterson ("Plaintiff" or "Peterson") agreed to bring any dispute between her and her employer, Wind Gap Farm Services LLC ("Wind Gap Farm"), in arbitration, not in court. With this lawsuit, Plaintiff seeks to repudiate her agreement. Whatever the merits of the case, Plaintiff cannot litigate her claims in court because she entered into a binding and enforceable arbitration agreement precluding this lawsuit. Plaintiff cannot deny the enforceability of the arbitration agreement because she freely entered into the agreement and her claims fall squarely within its scope. Moreover, Plaintiff is estopped from evading her agreement to arbitrate as to the company she previously worked with, Binnacle Capital Services LLC ("Binnacle"), because her claims against Binnacle are identical to her claims against Wind Gap Farm. Accordingly, Defendants move, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* to (a) compel Plaintiff to arbitrate her claims and (b) dismiss this case, or stay it pending arbitration.

I.      FACTS

A.      Plaintiff's Work with Wind Gap Farm and Binnacle Capital Services

Wind Gap Farm and Binnacle are limited liability companies. Affidavit of David Altshuler ("Altshuler Aff."), ¶ 4. Binnacle engaged Plaintiff in April 2014 to provide nursing services. Complaint ¶ 9; Altshuler Aff. ¶ 5. In April 2016, Plaintiff began working for Wind Gap Farm.  Altshuler Aff. ¶ 6.  Her job duties otherwise remained the same. *Id*.

B.      Plaintiff Agreed to Bring Any Dispute with Wind Gap Farm in Arbitration

On November 10, 2017, Wind Gap Farm offered Plaintiff a Confidentiality & Non-Disclosure Agreement (the "Agreement"), which contained, among other things, an arbitration provision.  Altshuler Aff. ¶¶ 7, 11; **Exhibit A**.  Plaintiff was given the opportunity to take the document home with her, and was encouraged to consult with an attorney before signing it. Altshuler Aff. ¶ 11; **Exhibit A**, ¶ 13.  Plaintiff accepted the Agreement, and returned the signed Agreement to Wind Gap Farm on November 20, 2017.  Altshuler Aff. ¶¶ 12; **Exhibit A**, at p.2.

The Agreement states, in relevant part:

> [B]oth the Company and I agree to bring any dispute … in arbitration on an individual basis only, and not on a class or collective basis on behalf of others.

Altshuler Aff., **Exhibit A**, ¶ 10.[1]  In addition to the mutual promises to arbitrate, the Agreement provides two other forms of consideration. First, the Agreement states that the promises set forth in the agreement were "part of [Plaintiff's] 'at-will' employment / engagement relationship with the Company." Altshuler Aff., **Exhibit A**, at 1. Second, the Agreement states that the promises made by Plaintiff were "for good and valuable consideration beyond any wages and/or compensation due [Plaintiff] in the amount of One thousand Dollars and no cents ($1,000.00)." *Id*. True to the Agreement's terms, Plaintiff received $1,000 beyond her wages in November

---

[1]  The Agreement contains a class action waiver, which the U.S. Supreme Court recently held are enforceable in *Epic Systems v. Lewis*, No. 16-285 (May 21, 2018).

2017, in consideration for her agreement to arbitrate. Altshuler Aff. ¶¶ 13-14. Plaintiff continued

to work for Wind Gap Farm following her execution of the Agreement. Altshuler Aff. ¶ 12.

Despite the provision of the Agreement, Plaintiff filed a lawsuit in Superior Court (since

removed to this Court) alleging that Wind Gap Farm and Binnacle failed to pay her overtime, in

violation of the Massachusetts Wage Act, the Massachusetts Minimum Fair Wages Act, and the

federal Fair Labor Standards Act ("FLSA"). *See* Complaint ¶ 14. (Defendants deny the

allegations of the Complaint, and otherwise reserve all denials and defenses.)

Counsel for Defendants asked if Plaintiff would agree to submit her claims to arbitration,

as required by the Agreement, but Plaintiff refused.

## II.   THE COURT SHOULD ORDER PLAINTIFF TO ARBITRATE HER CLAIMS, AND DISMISS OR STAY THIS ACTION

Having accepted the benefits of the Agreement, with this lawsuit Plaintiff now seeks to

evade her promise to arbitrate her disputes with the Company. Plaintiff should be held to her

agreement, and compelled to arbitrate her claims.

### A.   The Federal Arbitration Act Applies To The Arbitration Agreement

There is a liberal policy favoring the enforcement of arbitration agreements. *AT&T*

*Mobility, LLC v. Concepcion*, 563 U.S. 333, 346 (2011). The Federal Arbitration Act ("FAA")

provides: "A written provision in … a contract evidencing a transaction involving commerce to

settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be

valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract." 9 U.S.C. § 2. In enacting the FAA, Congress sought to overcome

widespread judicial hostility to the enforcement of arbitration agreements. *Hall St. Assoc., LLC v.*

*Mattel, Inc*., 552 U.S. 576, 581 (2008); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440,

443 (2006) (explaining that the FAA was enacted "[t]o overcome judicial resistance to

arbitration"). Thus, the FAA is designed "to move the parties to an arbitrable dispute out of court

and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury*

*Constr. Corp.*, 460 U.S. 1, 22 (1983). To this end, the FAA not only places arbitration agreements on equal footing with other contracts, but amounts to a "congressional declaration of a liberal federal policy <u>favoring</u> arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (emphasis added).

The FAA indisputably governs the Agreement here. First, the Agreement explicitly invokes the FAA. Altshuler Aff., **Exhibit A**, ¶ 10 ("[T]he company may lawfully seek enforcement of this Agreement and the Class Action Waiver under the Federal Arbitration Act"). That alone is sufficient to bring the agreement within the purview of the FAA. *See Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63-64 (1995) (FAA applies even where contract also provides that state law governs); *cf. Direct TV, Inc. v. Imburgia*, 136 S. Ct. 463, 468-471 (2015) (FAA applies even if agreement designates a state choice of law). Second, Plaintiff's services affect commerce, which also triggers the FAA and its strong policy favoring arbitration. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (holding that the FAA extends to employment cases).

**B.    The Arbitration Agreement Is Valid And Must Be Enforced**

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract. 9 U.S.C. § 4. In determining whether to compel arbitration under the FAA, two "gateway" issues are to be evaluated: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002).

**1.    The Gateway Issues Under The FAA Have Been Satisfied**

Both of the "gateway" issues have been satisfied here, and thus, Plaintiff's claims should be compelled to arbitration.

### a.    A Valid Agreement to Arbitrate Exists

General contract law principles apply to the interpretation and enforcement of arbitration agreements. *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004). Wind Gap Farm's burden is minimal—it only needs to show that Plaintiff "accepted the arbitration agreement" and "entered into a valid, enforceable agreement to arbitrate [her] claims." *Ellerbee v. Gamestop, Inc.,* 604 F. Supp. 2d 349, 354 (D. Mass. 2009). Under Massachusetts law, the formation of a contract requires a definite offer, acceptance, and consideration. *United States ex rel. Hagerty v. Cyberonics, Inc.*, 146 F. Supp. 3d 337, 346 (D. Mass. 2015).

The parties' Arbitration Agreement readily meets these requirements. Wind Gap Farm offered Plaintiff a 2-page agreement with straightforward terms. Plaintiff then accepted Wind Gap Farm's offer by signing the Agreement. And the Agreement is supported by consideration: First, the parties exchanged mutual promises to arbitrate their disputes, which is enough to find consideration on its own. Altshuler Aff., **Exhibit A**, ¶ 10; *see Miller v. Cotter*, 448 Mass. 671, 684 n.16 (2007) ("Each party waived its right to judicial process and gained the right to invoke arbitration. This reciprocal exchange of benefit and detriment constitutes consideration")*.* Second, Plaintiff received $1,000 in exchange for her assent to the terms of the Agreement. Altshuler Aff. ¶¶ 13-14. Finally, Plaintiff agreed that her promises were made in exchange for her employment, which is enough to create a binding agreement under Massachusetts law. *Ellerbee,* 604 F. Supp. 2d at 354 ("Plaintiff's continued employment constituted adequate consideration for the agreement").

Plaintiff may note that the Agreement is not counter-signed by Mr. Altshuler, and that she did not date it.[2]  These points are immaterial.  "A written contract, signed by only one party, may be binding and enforceable even without the other party's signature if the other party manifests acceptance."  *Haufler v. Zotos*, 446 Mass. 489, 498-99 (2006).  Given that Wind Gap Farm paid Plaintiff the $1,000 promised and continued to employ her after she signed the Agreement, Wind

---

[2]  Plaintiff raised these arguments during discussions between counsel.

Gap Farm clearly "manifested acceptance" of the Agreement, making it binding and enforceable. *See id.* Likewise, "the fact that the Arbitration Agreement is undated does not render it invalid." *Scott v. Joe Rizza Ford, Inc.*, 2007 WL 2225904, *2 (N.D. Ill. July 30, 2007); *see Golden Gate Nat'l Senior Care, LLC v. Newkam for estate of Newkam*, 2017 WL 3233014, *6 (M.D. Pa. July 31, 2017) (absence of a date on agreement is not sufficient to invalidate the agreement, as it was undisputed the party signed the agreement). A valid agreement to arbitrate therefore exists.

> **b.    Plaintiff's Claims Fall Within the Scope Of The Agreement**

The second gateway issue is whether the arbitration provision covers the dispute between the parties. In making this determination, the FAA requires courts to apply a presumption in favor of arbitrability. *See Moses H. Cone*, 460 U.S. at 24-25 (holding that "the Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability"). In fact, disputes are covered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

Plaintiff cannot seriously dispute that her claims fall within the scope of the Agreement's arbitration provision. After all, Plaintiff specifically agreed "to bring <u>any dispute</u> … in arbitration on an individual basis only." Altshuler Aff., **Exhibit A**, ¶ 10 (emphasis supplied). Plaintiff's claims in this lawsuit – for violation of the Wage Act and FLSA – unquestionably qualify as "any dispute" and fall within the scope of the arbitration provision. *See Machado v. System4 LLC*, 465 Mass. 508, 511 n.9 (2013) (enforcing arbitration provision in wage and hour dispute in which the parties agreed "to arbitrate controversies, disputes or claims … arising out of or related to … [defendant's] relationship with [plaintiff]").

- 6 -

### 2.      Plaintiff Cannot Avoid Arbitration By Claiming Duress

Plaintiff may argue that the Agreement should be avoided because it was "signed under duress."[3]  "A party claiming to have entered into a contract under duress has the burden of showing that (1) [she] has been the victim of some unlawful or wrongful act or threat; (2) the act or threat deprived [her] of [her] free or unfettered will; and (3) due to the first two factors, [she] was compelled to make a disproportionate exchange of values."  *Happ v. Corning, Inc.*, 466 F.3d 41, 44 (1st Cir. 2006).  There was no "unlawful or wrongful act or threat" here.  Plaintiff was offered $1,000, and continued employment, to accept the Agreement and agree (among other things) to arbitrate any claims.  Requiring an employee to sign an arbitration clause as a condition of employment is not duress.  *See DeLuca v. Bear Stearns & Co.*, 175 F. Supp. 2d 102, 114 (D.Mass. 2001).  Further, Plaintiff took ten days to consider the Agreement before returning it, and was encouraged to consult with an attorney about the Agreement.  *See DeLuca*, 175 F.Supp.2d at 114 (finding no duress because plaintiff had two days to consider arbitration provision, and was told to consult with counsel).  Because there was no unlawful duress, Plaintiff cannot avoid the arbitration provision.  *See id.* (rejecting duress argument); *see also Farnsworth v. Towboat Nantucket Sound, Inc.*, 36 F. Supp. 3d 247 (D.Mass. 2014) (finding there was no duress because there was no evidence that individual was forced to sign arbitration agreement "by putting a gun to his head or manually forcing him to sign the contract").

### C.      Plaintiff's Claims Against Binnacle Must Also Proceed to Arbitration

Although not a signatory to the Agreement, Binnacle is entitled to enforce and rely upon the arbitration provision as well. In *Machado v. System4 LLC*, 471 Mass. 204 (2015), the Supreme Judicial Court explained in detail the circumstances under which a non-signatory may participate in an arbitration despite the absence of a direct contractual relationship. Courts have recognized six theories for binding nonsignatories to arbitration agreements, including equitable estoppel, which allows a nonsignatory to compel arbitration when the signatory raises allegations

---

[3]  Plaintiff raised this point during discussions between counsel.

of "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id*. at 211 (quotation omitted). The SJC noted that while courts have been "hesitant to estop a <u>nonsignatory</u> seeking to avoid arbitration," they have readily estopped a <u>signatory</u> from "avoiding arbitration with a nonsignatory," as Plaintiff attempts to do here. *Id*. (emphasis added). The rationale for the concerted misconduct principle is rooted in the FAA itself, as to allow duplicative proceedings in court and arbitration would "effectively thwart[]" the goals of the FAA and "render[] meaningless" the arbitration proceedings between the two signatories. *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

Applying this framework, the Court in *Machado* compelled the plaintiffs, who were signatories to an arbitration agreement, to arbitrate their wage and hour claims against a nonsignatory because the plaintiffs alleged "substantially interdependent and concerted misconduct" by both the signatory and the nonsignatory defendant. The court explained that the nonsignatory could rely on the arbitration agreement because the plaintiffs (a) "lumped the two defendants together in the complaint," (b) "consistently charged" the defendants with "equal wrongs," and (c) asserted that the defendants subjected them to "numerous misrepresentations" and misclassified them as independent contractors. 471 Mass. at 215-16. Further, the court noted that there was "not a single claim alleged against [the signatory and nonsignatory defendant] as a separate entity." *Id*. at 216. Accordingly, the court held that the plaintiffs were estopped from avoiding arbitration with the nonsignatory. *Id*.

Here, as in *Machado*, Plaintiff is estopped from asserting her claims against Binnacle in court because she has alleged substantially interdependent and concerted misconduct by both

defendants. Plaintiff has unquestionably "lumped the two defendants together" in the Complaint and accused them of "equal wrongs." For example, Plaintiff asserts the following in her Complaint:

- At no time while working with either Binnacle Capital or Wind Gap Farm was Peterson salaried (Complaint ¶ 12);

- On a regular basis Peterson worked well in excess of 40 hours per work week for both Binnacle Capital and Wind Gap Farm (*id*. ¶ 13);

- At no time during her work with either Binnacle Capital or Wind Gap Farm was Peterson paid overtime. (*id*. ¶ 14);

- Peterson estimates that she is owed by Binnacle Capital and Wind Gap Farm in excess of $100,000 in unpaid overtime (*id*. ¶ 15) (emphases added).

As in *Machado*, there is "not a single claim alleged" against Binnacle "as a separate entity" from Wind Gap Farm; the claims are identical. 471 Mass. at 216. Accordingly, Plaintiff is estopped from avoiding the arbitration agreement with respect to her claims against Binnacle, and her claims against Binnacle must be compelled to arbitration. *See id.* (citing cases where concerted misconduct requirement was satisfied and nonsignatory compelled signatory to arbitration); *see also Maldonado v. Mattress Firm, Inc.*, No. 8:13-CV-292-T-33AEP, 2013 WL 2407086, at *4 (M.D. Fla. June 3, 2013) (in lawsuit to recover overtime pay under FLSA, compelling signatory to arbitration agreement to arbitrate claims against nonsignatory where claims against signatory "arise out of the same operative facts" as claims previously compelled to arbitration, and complaint "fails to distinguish between the three Defendants").

**D.     The Court Should Dismiss or Stay This Case**

Because the Court lacks jurisdiction over the present dispute, by virtue of the parties' Agreement, it should dismiss the instant action, under Rule 12(b)(1).  Alternatively, the Court should stay this matter until the parties have completed arbitration.  *See* 9 U.S.C. § 3 (when a

lawsuit is filed in court contrary to an arbitration provision, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement").

## III.   CONCLUSION

Plaintiff expressly and voluntarily agreed to arbitrate individually "any dispute" with her employer in arbitration. Thus, the Court should enforce the parties' agreement, order Plaintiff to arbitrate her claims with Defendants, and dismiss or stay this action.

Respectfully submitted,

WIND GAP FARM SERVICES LLC AND
BINNACLE CAPITAL SERVICES LLC

By their attorneys,

/s/ Stephen Melnick
Anthony Rizzotti (BBO No. 561967)
Stephen Melnick (BBO No. 667323)
LITTLER MENDELSON, P.C.
One International Place, Suite 2700
Boston, Massachusetts 02110
(T) (617) 378.6000
(F) (617) 737.0052
arizzotti@littler.com
smelnick@littler.com

Dated: June 5, 2018

- 10 -

**<u>CERTIFICATE OF SERVICE</u>**

I, Stephen Melnick, hereby certify that on this 5th day of June, 2018, the foregoing document was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via first class mail to all non-registered participants identified on the Notice of Electronic Filing.

/s/ Stephen Melnick_____
Stephen Melnick

Firmwide:155035871.3 058309.1001