UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**JANIS PETERSON,**                 )
                                    )        CIVIL ACTION
        **Plaintiff,**     )
                                    )        NO. 18-40088-TSH
        v.                  )
                                    )
**BINNACLE CAPITAL SERVICES LLC**   )
**and WIND GAP FARM SERVICES LLC,** )
                                    )
        **Defendants.**    )
_____)

**ORDER AND MEMORANDUM ON DEFENDANTS' MOTION TO COMPEL ARBITRATION (Docket No. 6)**

**March 8, 2019**

**HILLMAN, D.J.**

      Janis Peterson ("Plaintiff") brought suit in Massachusetts Superior Court alleging that Binnacle Capital Services LLC ("Binnacle") and Wind Gap Farm LLC ("Wind Gap") (collectively "Defendants") violated the Massachusetts Wage and Hour Laws, Mass. Gen. L. c. 151, § 1A, *et seq.*, Massachusetts Weekly Payment of Wages Statute, Mass. Gen. L. c. 149, §§ 148; 150, and the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.*  Defendants removed the case to this Court and subsequently filed a motion to compel arbitration. (Docket No. 6).  For the reasons that follow, Defendants' motion is ***granted*** in part and ***denied*** in part.

**Background**

      In April 2013, Binnacle hired Plaintiff to perform home healthcare services as a Registered Nurse.  On April 19, 2016, Plaintiff's employment was transferred to Wind Gap for which she performed similar home healthcare services as a Registered Nurse.  Plaintiff was paid $50.00 per hour for her services and was never a salaried employee.  She regularly worked more than 40 hours

per week for both Binnacle and Wind Gap but contends that she was never paid overtime. Plaintiff estimates that she is owed in excess of $100,000 in unpaid overtime.

In November 2017, Plaintiff signed a Confidentiality & Non-Disclosure Agreement with Wind Gap. As consideration, Plaintiff was notified that the Agreement was "part of [Plaintiff's] 'at-will' employment / engagement relationship with the Company." In addition, Plaintiff was promised "for good and valuable consideration beyond any wages and/or compensation due [Plaintiff] in the amount of One thousand Dollars and no cents ($1,000.000)." The Agreement provides, in relevant part:

> This Agreement affects my ability to participate in class and collective actions. Specifically, both the Company and I agree to bring any dispute (except either party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy but only upon the ground that the award to which the party may be entitled may be rendered ineffectual without such relief, including but not limited to enforcing the provisions of paragraph 8 above) in arbitration on an individual basis only, and not on a class or collective basis on behalf of others. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or as a member in any such class or collective proceeding ("Class Action Waiver"). Notwithstanding any other provision of this Agreement, disputes regarding the validity, enforceability or breach of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. In any case in which (1) the dispute is filed as a class or collective action and (2) there is a final judicial determination that all or part of the Class Action Waiver is unenforceable, the class and/or collective action to that extent must be litigated in a civil court of competent jurisdiction, but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration. I understand that I shall not be retaliated against, discipline or threated with discipline as a result of exercising any rights under Section 7 of the National Labor Relations Act by the filing of or participating in a class or collective action in any forum. However, the Company may lawfully seek enforcement of this Agreement and the Class Action Waiver under the Federal Arbitration Act and seek dismissal of such class or collective actions or claims. The Class Action Waiver shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.

(Docket No. 7-1, ¶ 10).

**Legal Standard**

Written arbitration agreements are governed pursuant to the Federal Arbitration Act. 9 U.S.C. §§1-301. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119, 121 S.Ct. 1302 (2001) (holding that the FAA extends to employees other than transportation workers in employment cases). The FAA was enacted to combat "longstanding judicial hostility to arbitration agreements and to 'place such agreements upon the same footing as other contracts.'" *United States ex rel. Hagerty v. Cyberonics, Inc.*, 146 F. Supp. 3d 337 (D. Mass. 2015) (quoting *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 271, 115 S.Ct. 834 (1995)). When "construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682, 130 S.Ct. 1758 (2010) (quotation marks and citation omitted). The FAA institutes "a liberal federal policy favoring arbitration agreements" thus "establish[ing] . . . as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927 (1983).

"A party seeking to compel arbitration under the FAA must demonstrate that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375 (1st Cir. 2011) (quotation marks and citation omitted). The Supreme Court has clarified that courts "discharge th[e] duty [of effectuating the policy favoring arbitration] by: (1) applying the presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adhering to the presumption and ordering arbitration only where the presumption is not rebutted." *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 130 S.Ct. 2847, 2858-59 (2010). Thus, a party seeking to compel arbitration must demonstrate that a

valid arbitration agreement exists. If it does, ambiguities regarding the scope of the agreement are presumptively resolved in favor of arbitration. *See McCarthy v. Azure*, 22 F.3d 351, 354-55 (1st Cir. 1994) (noting that despite the strong federal policy favoring arbitration, "a party seeking to substitute an arbitral forum for a judicial forum must show, at a bare minimum, that the protagonists have agreed to arbitrate *some* claims. . . . The federal policy presumes proof of a preexisting agreement to arbitrate disputes arising between the protagonists" (emphasis in original)).

"The Supreme Court has differentiated between two types of challenges to the validity of arbitration agreements: (1) challenges to the validity of an entire contract which contains an arbitration clause, and (2) challenges to the validity of the specific agreement to resolve the dispute through arbitration." *Farnsworth v. Towboat Nantucket Sound, Inc.*, 790 F.3d 90, 96 (1st Cir. 2015) (citations omitted). "[C]hallenges of the first type are for the arbitrator to decide, whereas challenges of the second type are for the courts to decide, if timely and properly made." *Id.* (citations omitted).[1]

## Discussion

*1. Agreement to Arbitrate*

*a. Challenges to the Validity of the Entire Contract*

---

[1] This differentiation highlights two tenets of arbitration doctrine. First, since "arbitration is a matter of contract[,] . . . a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588 (2002) (citation and internal quotation marks omitted). Second, under Section 2 of the FAA, a written arbitration agreement "is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70, 130 S.Ct. 2772 (2010) (emphasis in original) (quoting 9 U.S.C. § 2). "The first principle means that if a party challenges the validity of the arbitration clause itself, a court must determine the challenge . . . The second principle means that, if a party fails to challenge the validity of the arbitration clause itself, the agreement to arbitrate is enforceable and any dispute about the validity of the contract as a whole goes to the arbitrator." *Farnsworth*, 790 F.3d at 96-97.

As a preliminary matter, Plaintiff argues that the Agreement is invalid because "when Wind Gap presented her with the so-called 'CONFIDENTIALITY & NON-DISCLOSURE AGREEMENT', it implicitly, if not explicitly, threated [sic] that if she did not sign . . . she would not be scheduled to work any further and most importantly would not be paid for reimbursable expenses that Wind Gap already owed her." (Docket No. 17 at 4).  This argument targets the Agreement in its entirety.[2]  Therefore, because Plaintiff does not contend that she was under duress specifically with respect to the agreement to arbitrate, this issue is for the arbitrator to decide. *See Farnsworth*, 790 F.3d at 98 ("[E]ven where the claimed basis for invalidity of the contract is logically applicable to the entire contract, courts nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene.").[3]

### b. *Challenges to the Arbitration Agreement*

When deciding challenges under the second prong (whether a valid arbitration agreement exists) federal courts generally "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920 (1995); *see also Campbell v. General Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st Cir. 2005)

---

[2] The heading of this section in Plaintiff's brief is "The Class Action Waiver is Unenforceable Because Of Illegal Duress" and the first sentence of the section alleges that "The Class Action Waiver which Defendants now seek to enforce cannot be because it was obtained by Wind Gap via illegal duress." (Docket No. 11 at 3). However, "[w]hen deciding whether a plaintiff has specifically challenged an arbitration clause, the analysis 'centers on the factual allegations of the complaint.'" *Farnsworth v. Towboat Nantucket Sound, Inc.*, 36 F. Supp. 3d 247, 253 (D. Mass. 2014) (quoting *Escobar-Noble*, 680 F.3d at 122), *aff'd*, 790 F.3d 90 (1st Cir. 2015). The only arguments directed specifically at the arbitration agreement are legal conclusions. On the other hand, the factual allegations noted above are all aimed at the Agreement in its entirety. In addition, the attachments that Plaintiff cites as evidence of duress are emails encouraging her to sign the Agreement and do not reference the arbitration agreement.

[3] Indeed, the argument here is almost the identical to the one rejected by the First Circuit in *Farnsworth*. In that case, the plaintiff entered into a salvage contract with the defendant to help him when his boat ran aground on rocks. Within that contract was an arbitration agreement. The plaintiff later objected to arbitration because he signed the contract under duress but "did not challenge the validity of the arbitration clause specifically in his complaint." 790 F.3d at 92.

("[P]rinciples of state contract law control the determination of whether a valid agreement to arbitrate exists.").

The Agreement notes that the parties "intend[] to be legally bound . . . under the laws of the State of Vermont." (Docket No. 7-2, at 2). "Under Vermont law, and consistent with American contract law generally, contract formation depends upon proof of 'a meeting of the minds of the parties: an offer by one of them and an acceptance of such offer by the other. To be valid, an offer must be one which is intended of itself to create a legally binding relationship on acceptance.'" *Top Ridge Investments, LLC v. Anichini, Inc.*, 2017 WL 3016787, at *5 (D. Vt. July 14, 2017) (quoting *Starr Farm Beach Campowners Ass'n, Inc. v. Boylan*, 174 Vt. 503, 505, 811 A.2d 155, 158 (2002)). "Either a benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract. *Bergeron v. Boyle*, 176 Vt. 78, 87, 838 A.2d 918 (2003). Mutual promises, "'in each of which the promisor undertakes some act or forbearance that will be, or apparently may be, detrimental to the promisor or beneficial to the promisee, and neither of which is void, are sufficient consideration for one another.'" *H.P. Hood & Sons v. Heins*, 124 Vt. 331, 337, 205 A.2d 561 (1964) (quoting 1 Williston on Contracts § 103, at 395-96 (3d ed. 1957)). "The definition of a benefit is extremely broad." *Lloyd's Credit Corp. v. Marlin Management Servs., Inc.*, 158 Vt. 594, 599, 614 A.2d 812 (1992). Thus, even a "very slight advantage is sufficient to constitute consideration. *Id.* (quotation marks and citation omitted).

Vermont law favors arbitration. *Union Sch. Dist. No. 45 v. Wright & Morrissey, Inc.*, 183 Vt. 555, 559-60, 945 A.2d 348 (2007). When determining whether parties agreed to arbitrate, Vermont courts "apply the ordinary rules of contract interpretation." *State v. Philip Morris USA Inc.*, 183 Vt. 176, 183, 945 A.2d 887 (2008) (citation omitted). In addition, when interpreting a contract of adhesion like the Agreement here, Vermont courts apply normal rules of construction

and parole evidence and, if those methods fail to determine the meaning of a contract, then construe ambiguous provisions against the party responsible for drafting it. *Mount Everest Ski Shops, Inc. v. Nordica USA, Inc.*, 736 F. Supp. 523, 530 (D. Vt. 1989); *see also U.S. ex rel. Harris v. EPS, Inc.*, 2006 WL 1348173, at *5 (D. Vt. May 16, 2006) ("There is a well-established rule in Vermont, as elsewhere, that ambiguous terms of a document must be construed against the drafter." (citing *State v. Spitsyn*, 174 Vt. 545, 547, 811 A.2d 201 (2002)).

Plaintiff argues that the first sentence of the relevant section of the Agreement notes that the section "affects [Plaintiff's] ability to participate in class and collective actions." (Docket No. 7-1, ¶ 10). According to Plaintiff, it follows that this section is not an arbitration agreement at all. The Agreement further notes, however, that "[i]n any case in which (1) the dispute is filed as a class or collective action and (2) there is a final judicial determination that all or part of the Class Action Wavier is unenforceable, the class and/or collective action to that extent must be litigated in a civil court of competent jurisdiction, *but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration*." *Id.* (emphasis added). Moreover, the section explicitly invokes the FAA (which deals exclusively with arbitration) and concludes that "the Class Action Waiver shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration." *Id.* This conclusion would not make sense if the section were only a class action waiver. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63, 115 S.Ct. 1212 (1995) (noting that a contract "should be read to give effect to all its provisions and to render them consistent with each other."). I find that a reasonable person in Plaintiff's position would have concluded that the Agreement's

language constituted a waiver of the right to proceed in a judicial forum in at least some circumstances.[4]

In addition, Plaintiff contends that even if there is an arbitration agreement, Defendants did not provide consideration. According to Plaintiff, she never received the $1,000 payment promised in return for signing the Agreement. While Defendants dispute this contention, *see* Peach Aff. ¶ 10, resolving it is unnecessary. In *Mead v. Owen*, the Vermont Supreme Court noted that "mutual promises of submission to arbitration afford sufficient consideration to bind the parties." 83 Vt. 132, 74 A. 1058 (1910). That set of reciprocal promises exist here. Further, Plaintiff was promised continued at-will employment for singing the agreement, which several courts have found sufficient to constitute valid consideration for an arbitration agreement. *See, e.g.*, *Marciano v. DCH Auto Group*, 14 F. Supp. 3d 322, 377 (S.D.N.Y. 2014) (enforcing arbitration agreement supported by continued at-will employment and mutual agreement to arbitrate claims); *Teah v. Macy's Inc.*, 2011 WL 6838151, at *5 (E.D.N.Y. Dec. 29, 2011) (same); *Josie-Delerme v. Am. Gen. Fin. Corp.*, 2009 WL 2366591, at *3 (E.D.N.Y. July 29, 2009) (enforcing arbitration agreement supported by continued at-will employment alone).[5]

---

[4] While the Agreement is certainly ambiguous, the ambiguity concerns the scope of the arbitration agreement, not whether one exists. As discussed below, however, this Court is not the proper forum to address the scope of the Agreement.

[5] While Plaintiff was provided continued employment and Wind Gap has also agreed to arbitrate its own claims, Plaintiff was also promised a large sum of money. Defendants nonetheless argue that "[i]t is hornbook law that although some of the consideration to a contract may be invalid, a contract is enforceable so long as a portion of the consideration provided in same is valid." *Daigle v. West*, 225 F. Supp. 2d 236, 247 (N.D.N.Y. 2002). While Defendants are correct that "if one of two considerations for a contract is insufficient, *but not illegal*, the other, if sufficient, will support the contract." 139 A.L.R. 852 (1942) (emphasis added). Thus, lurking in the background of this case is the possibility of fraudulent inducement. Since Plaintiff does not present this argument, this Court will not address it. As a practical matter, however, it is worth noting that if courts uphold contracts of this sort, employers will have the perverse incentive to offer employees large sums of money to sign arbitration agreements without ever intending to pay but continue to employ workers or agree to arbitrate their own claims to provide consideration.

Even if the Agreement were fraudulently induced, however, this Court still might not be the proper forum for addressing the issue. In *Rent-A-Center*, the Supreme Court reiterated the principle that "where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part

*2. Parties to the Agreement*

Defendants argue that Binnacle, although not a signatory to the Agreement, is entitled to enforce and rely upon the arbitration provision. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632, 129 S.Ct. 1896 (2009) ("[A] litigant who was not a party to the relevant arbitration agreement may invoke [9 U.S.C.] § 3 if the relevant state contract law allows him to enforce the agreement."). Defendants cite *Machado v. System4 LLC*, for the proposition that a nonsignatory can compel arbitration when the signatory "raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." 471 Mass. 204, 211, 28 N.E.3d 401 (2015) (quoting *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527 (5th Cir. 2000)). Defendants do not cite, and this Court has not identified, any Vermont courts applying this proposition. Nevertheless, it does not apply here.

Although Plaintiff does "lump[] the two defendants together" in her complaint, the claims against them are neither substantially interdependent nor instances of concerted misconduct. *Id.* at 215, 28 N.E.3d 401. Binnacle hired Plaintiff in April 2003. To the best of her knowledge, Wind Gap did not even exist at that time. Peterson Aff. ¶ 4. On April 19, 2016, Plaintiff's employment was transferred to Wind Gap. To the best of her knowledge, Binnacle subsequently ceased operations. *Id.* ¶ 7. Thus, although the claims against the two companies are substantially *similar*, they are not substantially *interdependent*. Thus, I find that Binnacle was not a party to the arbitration agreement.

---

of that contract—we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene." 561 U.S. 63, 71, 130 S.Ct. 2772 (2010). As noted above, a written arbitration agreement "is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained." *Id.* at 70, 130 S.Ct. 2772 (emphasis in original) (quoting 9 U.S.C. § 2); *see also Farnsworth v. Towboat Nantucket Sound, Inc.*, 790 F.3d 90, 96-97 ("[I]f a party challenges the validity of the arbitration clause itself, a court must determine the challenge . . . if a party fails to challenged the validity of the arbitration clause itself, the agreement to arbitrate is enforceable and any dispute about the validity for the contract as a whole goes to the arbitrator." (citations omitted)).

*3. Scope*

"Whether or not a dispute is arbitrable is typically a question for judicial determination." *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375 (1st Cir. 2011); *see also Granite Rock*, 130 S.Ct. at 2858 ("[E]xcept where the parties clearly and unmistakably provide otherwise, it is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter."). "[G]enerally speaking, the presumption in favor of arbitration applies to the resolution of scope questions. . . . A scope question arises when the parties have a contract that provides for arbitration of some issues and it is unclear whether a specific dispute falls within that contract." *Paul Revere Variable Annuity Ins. Co. v. Kirschhofer*, 226 F.3d 15, 25 (1st Cir. 2000); *see also Moses H. Cone*, 460 U.S. at 24-25, 103 S.Ct. 927 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

There is ambiguity in the Agreement. As noted above, it can be argued that the "Class Action Waiver" is exactly what it says it is—a class action waiver. Further, the Agreement goes on to read that "the Company and I agree to bring any dispute . . . in arbitration on an individual basis only, and not on a class or collective basis on behalf of others." (Docket No. 7-2, at 2). On the one hand, this passage might be read to require any claims that the parties agree to bring in arbitration must be on an individual basis only. On the other hand, it might be read to require the parties to bring any dispute in arbitration *and* on an individual basis only. Additional passages belie the first interpretation and bolster the second. For instance, the Agreement notes that "[i]n any case in which (1) the dispute is filed as a class or collective action and (2) there is a final judicial determination that all or part of the Class Action Wavier is unenforceable, the class and/or collective action to that extent must be litigated in a civil court of competent jurisdiction, *but the*

*portion of the Class Action Waiver that is enforceable shall be enforced in arbitration.*" *Id.* This provision implies that arbitration is at least mandatory with respect to class claims and consequently undermines the first interpretation. The final sentence of the relevant section also supports the later interpretation, which implies that the agreement to arbitrate applies to individual claims and not only class actions: "The Class Action Waiver shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration." *Id.* Because I must construe the agreement with a presumption favoring arbitration and because this agreement does not clearly and unmistakably provide otherwise, I find that Plaintiff's individual claims fall within the ambit of the arbitration agreement.

### *4. Proper Disposition of the Case*

I must now determine whether to stay or dismiss this case. *See* 9 U.S.C. § 3 (when a lawsuit is brought contrary to an arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."). The First Circuit has held that "[w]here one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the law suit, if *all* claims asserted in the case are found arbitrable. If some claims are non-arbitrable, the district court cannot dismiss the entire case." *Next Step Medical Co., Inc. v. Johnson & Johnson Intern.*, 619 F.3d 67, 71 (1st Cir. 2010) (emphasis in original) (citations omitted). Because I find that the claims against Binnacle are not arbitrable, I must stay the proceedings pending arbitration.

### **Conclusion**

For the reasons stated above, Defendants' Motion to Compel Arbitration (Docket No. 6) is **_granted_** with respect to Plaintiff's claims against Wind Gap and **_denied_** with respect to Plaintiff's

claims against Binnacle. Further, this case is *stayed* with respect to Plaintiff's claims against Wind Gap pending the result of the arbitration.

**SO ORDERED**

                                                 */s/ Timothy S. Hillman*
                                                 **TIMOTHY S. HILLMAN**
                                                 **DISTRICT JUDGE**